**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FRANK COLON,** | : | **CIVIL NO. 3:15-CV-1526** |
| **Petitioner** | : | **(Judge Mannion)** |
| **v.** | : | |
| **TREVOR WINGARD,** | : | |
| **Respondent** | : | |

**<u>MEMORANDUM</u>**

Petitioner, Frank Colon ("Colon") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 challenging a judgment and conviction imposed in the Court of Common Pleas of York County, Pennsylvania. (Doc. 1). For the reasons discussed below, the court will deny the petition.

**I.    <u>Factual and Procedural Background</u>**

The Pennsylvania Superior Court summarized the factual background of this case as follows:

> . . .[Appellee's parole officer, Agent Scott Lapp] testified that he began supervising [Appellee], who was on parole, in October or November of 2008. Agent Lapp indicated that [Appellee] was not working regularly and, therefore, Agent Lapp told him to go to the Career Link to find a job. One evening, Agent Lapp saw

[Appellee] driving his vehicle around a bar in an area that was known for drug activity. Agent Lapp observed as [Appellee] picked up an individual in front of the bar, drove around the area for a few blocks, returned to the same location in front of the bar, and dropped off the individual. Agent Lapp pulled his vehicle alongside [Appellee]'s vehicle, told [Appellee] what he had just observed, and informed [Appellee] that what he just did was "illegal." Agent Lapp told [Appellee] that he could call the Columbia Police Department and have [Appellee]'s vehicle searched; however, Agent Lapp decided to give [Appellee] "one last opportunity to knock it off."

Subsequently, when Agent Lapp was at the Columbia Police Department, an officer informed him that he believed [Appellee] was living in the Cool Creek area, which was not the location of [Appellee]'s approved residence. Agent Lapp took a photograph of [Appellee] to the Cool Creek Apartments and showed it to the manager, who recognized [Appellee]. The manager confirmed that [Appellee] was staying at the apartments with Amy Bachman. Agent Lapp returned to this officer and discovered that Amy Bachman was on parole supervision by the York officer for drug possession. Agent Lapp contacted Ms. Bachman's supervising parole agent, who informed Agent Lapp that [Appellee]'s vehicle was always parked outside of Ms. Bachman's apartment when he conducted morning visits and [Appellee] would leave when the agent arrived for the home visit. Agent Lapp testified that he never saw [Appellee] at his approved residence and, when he called, [Appellee] was always somewhere else.

Agent Lapp, along with parole agents from Lancaster and York, including Ms. Bachman's supervising parole agent, conducted a search of Ms. Bachman's apartment at 8:00 a.m. on May 1, 2009, which Agent Lapp testified, was a few weeks after Agent Lapp had observed [Appellee]'s activities outside of the bar. Upon arrival into Ms. Bachman's apartment, Agent Lapp saw [Appellee] standing at the top of the steps with his car keys in his hands. Appellant was handcuffed, Agent Lapp removed the car keys from Appellant's hands, and Agent Lapp searched [Appellee]'s pockets, discovering a scale, a large amount of

2

money, and a couple of cell phones. [Appellee] indicated he used the scale to weigh food. Agent Lapp and another parole agent then searched [Appellee]'s vehicle, which was parked outside of Ms. Bachman's apartment. Therein, they discovered numerous envelopes, which bore [Appellee]'s name, and a jacket, out which "popped. . . an envelope and it had suspected drugs in it along with his driver's license." At this point, Agent Lapp telephoned the local police, who took custody of the contraband and filed charges against [Appellee].

On cross-examination, Agent Lapp testified that, when he was assigned [Appellee]'s parole case from a retiring agent, [Appellee]'s file contained anonymous complaints regarding drug activity. Agent Lapp admitted that his records revealed he saw [Appellee] outside of the bar two months, and not two weeks prior to searching his car on May 1, 2009. Agent Lapp indicated that, based on the anonymous complaints, the activity he observed outside of the bar, and the fact he believed [Appellee] was residing with Ms. Bachman, which was not [Appellee]'s approved residence, Agent Lapp decided to search [Appellee]'s person and his vehicle after he was discovered at Ms. Bachman's residence. Agent Lapp testified that, on May 1, 2009, after searching [Appellee]'s vehicle, Agent Lapp search [Appellee]'s sister['s] house, which was [Appellee]'s approved residence. Agent Lapp did not discovery any contraband during the search of [Appellee]'s sister's house.

**Commonwealth v. Colon**, 31 A.3d 309, 311-12 (Pa. Super. 2011), *appeal denied*, 42 A.3d 1058 (Pa. 2012)(record citations omitted).

Following a January 2011 trial, the jury convicted Appellee of possession with intent to deliver a controlled substance (PWID), possession of a controlled substance, and possession of drug paraphernalia.[1] On February 24, 2011, the sentencing court sentenced Appellee to an aggregate term of incarceration of not less than five nor more than fifteen years. Appellee timely filed an appeal, raising issues regarding the trial court's denial of his

---

[1] 35 P.S. §§780-113(a)(30), (16), and (32), respectively.

motion to suppress and the trial court's questioning of the sole defense witness. **See id**. at 311. This Court affirmed the judgment of sentence on October 28, 2011, holding that the trial court did not err in denying Appellee's motion to suppress and that Appellee failed to preserve his challenge to the trial court's questioning of the sole defense witness. **See id**. at 316-17. The Pennsylvania Supreme Court denied leave to appeal on April 11, 2012. **See Commonwealth v. Colon**, 42 A.3d 1058 (Pa. 2012).

On April 20, 2012, Appellee, acting *pro se,* filed the instant PCRA petition. The PCRA court appointed counsel.[2] The PCRA court subsequently held an evidentiary hearing on August 27, 2012. Following post-hearing submissions, on October 24, 2012, the PCRA court granted Appellee's petition and ordered a new trial. The Commonwealth filed the instant timely appeal.[3]

On appeal, the Commonwealth raises the following issue for our review:

1.    Did the PCRA court err in granting [Appellee's] petition for a new trial under the Post-Conviction Relief Act?

(Commonwealth's Brief at 4).

(Doc. 15-1 at 295, Commonwealth of Pennsylvania v. Colon, 2076 MDA 2012, unpublished memorandum (Pa. Super. filed Aug. 15, 2013)).

On August 15, 2013, the Pennsylvania Superior Court vacated the PCRA court's granting of a new trial and reinstated the judgment of sentence,

---

[2] We note that the trial judge did not preside over Appellee's PCRA proceedings.

[3] The Commonwealth filed a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on December 12, 2012, and the PCRA court issued an opinion on December 13, 2012.

finding that the PCRA court's grant of PCRA relief was not free from legal error and not supported by the evidence of record. Id.

On July 24, 2014, Petitioner filed a second PCRA petition. (Doc. 15-1 at 314, petition). By Order dated October 31, 2014, Colon's second PCRA petition was granted to the extent that his appeal rights were reinstated, and Petitioner was granted thirty (30) days within which to file a Petitioner for Allowance of Appeal to the Supreme Court. (Doc. 15-1 at 354). On May 6, 2015, Colon's Petition for Allowance of Appeal was denied. (Doc. 15-1 at 355, Order).

On August 5, 2015, Petitioner filed the timely instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, in which he raises the following three claims for review:

1.  "Ineffective Assistance of counsel for failing to object to extensive and prejudicial and insufficient evidence."

2.  "Appeal to the common pleas sentencing court, PCRA petition unit, appeal to the High State Court an Supreme Court."

3.  "Ineffective assistance of counsel insufficient of evidence."

(Doc. 1, petition).

### III.   Standards of Review

#### A. Jurisdiction

The Court has jurisdiction under 28 U.S.C. §2254, the federal habeas statute applicable to prisoners in custody pursuant to a state-court judgment. It permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution ... of the United States." 28 U.S.C. §2254(a). Errors of state law are not cognizable. Id.; see, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

It is Petitioner's burden to prove that he is entitled to the writ. See, e.g., Vickers v. Superintendent Graterford SCI, 858 F.3d 841, 848-49 (3d Cir. 2017). There are other prerequisites that he must satisfy before he can receive habeas relief (for example, he must overcome the burden imposed upon him by the standard of review set forth at 28 U.S.C. §2254(d)), but ultimately, Petitioner cannot receive federal habeas relief unless he demonstrates that he is in custody in violation of his federal constitutional rights. 28 U.S.C. §2254(a); see, e.g., Vickers, 858 F.3d at 849.

#### B. Exhaustion and Procedural Default

The "exhaustion doctrine" requires that a state prisoner raise his federal constitutional claims in state court through the proper procedures before he litigates them in a federal habeas petition. See, e.g., Lambert v.

Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). It is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). It "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Importantly, a petitioner must have "invoke[d] one complete round of the State's established appellate review process[,]" in order to satisfy the exhaustion requirement. O'Sullivan, 526 U.S. at 845. In Pennsylvania, this requirement means that a petitioner in a non-capital case must have first presented every federal constitutional claim raised in his federal habeas petition to the Superior Court either on direct or PCRA appeal. See, e.g., Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

The doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism," Coleman, 501 U.S. at 730. To succinctly summarize it, it provides that a Pennsylvania state prisoner in a non-capital case defaults a federal habeas claim if he: (a) failed to present it to the Superior Court and he cannot do so now because the state courts would decline to address the claims on the merits because state procedural

rules (such as, for example, the PCRA's one-year statute of limitations) bar such consideration; or (b) failed to comply with a state procedural rule when he presented the claim to the state court, and for that reason the Superior Court declined to address the federal claim on the merits. See, e.g., Edwards v. Carpenter, 529 U.S. 446, 451 (2000); O'Sullivan v. Boerckel, 526 U.S. 838, 851-56 (1999) (Stevens, J. dissenting) (describing the history of the procedural default doctrine); Wainwright v. Sykes, 433 U.S. 72 (1977); Lines v. Larkins, 208 F.3d 153, 162-69 (3d Cir. 2000).

When a claim is procedurally defaulted, a petitioner can overcome the default if he demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]"[4] Coleman, 501 U.S. at 750. " 'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[.]" Id. at 753 (emphasis in original).

---

[4] A petitioner may also overcome his default by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. This means that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995). In only the extraordinary case will a petitioner be able to establish a "fundamental miscarriage of justice." Petitioner does not argue that his case qualifies. It clearly does not.

### C. Merits Review

In 1996, Congress made important amendments to the federal habeas statutes with the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Among other things, AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002) (citing Williams v. Taylor, 529 U.S. 362, 403-04 (2000)). It reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (internal quotations and citation omitted).

A finding of fact made by a state court always has been afforded considerable deference in a federal habeas proceeding. AEDPA continued that deference and mandates that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. §2254(e)(1). Petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." Id.

AEDPA also put into place a new standard of review, which is codified at 28 U.S.C. §2254(d). It applies "to any claim that was adjudicated on the

merits" by the Superior Court and it prohibits a federal habeas court from granting relief unless the petitioner established that the Superior Court's "adjudication of the claim":

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). For the purposes of §2254(d), a claim has been "adjudicated on the merits in State court proceedings" when the state court (here, the Superior Court) made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground. See, e.g., Richter, 562 U.S. at 98-100; Robinson v. Beard, 762 F.3d 316, 324 (3d Cir. 2014).

Section 2254(d)(1) applies to questions of law and mixed questions of law and fact. In applying it, this Court's first task is to ascertain what law falls within the scope of the "clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. § 2254(d)(1). It is " 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision'." Dennis v. Sec'y, Pennsylvania

Dep't of Corr., 834 F.3d 263, 280 (2016) (*en banc*) (quoting Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003)).

Once the "clearly established Federal law, as determined by the Supreme Court of the United States" is ascertained, this Court must determine whether the Superior Court's adjudication of the claim at issue was "contrary to" that law. Williams, 529 U.S. at 404-05 (explaining that the "contrary to" and "unreasonable application of" clauses of §2254(d)(1) have independent meaning). A state-court adjudication is "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States" §2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," Williams, 529 U.S. at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," id. at 406.

A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. Williams, 529 U.S. at 406. Therefore, the issue in most federal habeas cases is whether the adjudication by the state court survives review under §2254(d)(1)'s "unreasonable application" clause.

"A state court decision is an 'unreasonable application of federal law' if the state court 'identifies the correct governing legal principle,' but 'unreasonably applies that principle to the facts of the prisoner's case'." Dennis, 834 F.3d at 281 (quoting Williams, 529 U.S. at 413). To satisfy his burden under this provision of AEDPA's standard of review, Petitioner must do more than convince this Court that the Superior Court's decision was incorrect. Id. He must show that it " '*was objectively unreasonable'*." Id. (quoting Williams, 529 U.S. at 409) (emphasis added by Court of Appeals). This means that Petitioner must demonstrate that the Superior Court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. As the Supreme Court noted:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. See Lockyer, supra, at 75, 123 S. Ct. 1166. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, §2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under §2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

12

Id. at 102.

The standard of review set forth at §2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]" Burt v. Titlow, 571 U.S. 12, 18 (2013).7 "[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to support the state court's factual findings." Dennis, 834 F.3d at 281 (quoting §2254(d)(2) and citing Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). " '[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance'." Titlow, 571 U.S. at 18 (quoting Wood v. Allen, 558 U.S. 290, 301 (2010)); see Rice v. Collins, 546 U.S. 333, 342 (2006) (reversing court of appeals' decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."). Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede'" the state court's adjudication. Wood, 558 U.S at 301 (quoting Collins, 546 U.S. at 341-42).

If the Superior Court did not adjudicate a claim on the merits, the Court must determine whether that was because Petitioner procedurally defaulted it. If the claim is not defaulted, or if Petitioner has established grounds to excuse his default, the standard of review at §2254(d) does not apply and the Court reviews the claim *de novo*. See, e.g., Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). However, in all cases and regardless of whether the standard of review at §2254(d) applies, the state court's factual determinations are presumed to be correct under §2254(e)(1) unless Petitioner rebuts that presumption by clear and convincing evidence. Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010); Nara v. Frank, 488 F.3d 187, 201 (3d Cir. 2007) ("the §2254(e)(1) presumption of correctness applies regardless of whether there has been an 'adjudication on the merits' for purposes of §2254(d).") (citing Appel, 250 F.3d at 210).

### D. Ineffective Assistance of Trial Counsel Claims

Claims of ineffective assistance are governed by the standard set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Strickland recognized that a defendant's Sixth Amendment right to the assistance of counsel for his defense entails the right to be represented by an attorney who meets at least a minimal standard of competence. 466 U.S. at 685-87. "[T]he Sixth Amendment does not guarantee the right to perfect

counsel; it promises only the right to effective assistance[.]" Titlow, 571 U.S. at 24.

Under Strickland, it is Petitioner's burden to establish that his "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. The Supreme Court has emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" Titlow, 571 U.S. at 22 (quoting Strickland, 466 U.S. at 690); Richter, 562 U.S. at 104 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (quoting Strickland, 466 U.S. at 689). Counsel cannot be deemed ineffective for failing to raise a meritless claim. See, e.g., Preston v. Sup't Graterford SCI, 902 F.3d 365, 379 (3d Cir. 2018).

Strickland also requires that Petitioner demonstrate that he was prejudiced by trial counsel's alleged deficient performance. This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." Strickland, 466 U.S. at 694. Counsel's errors must be so serious as to have "deprive[d] [Petitioner] of a fair trial, a trial whose result is reliable." Id. at 687. Under Strickland, "[t]he likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112.

The Supreme Court in Strickland noted that although it had discussed the performance component of an effectiveness claim prior to the prejudice component, there is no reason for an analysis of an ineffectiveness claim to proceed in that order. 466 U.S. at 697. If it is more efficient to dispose of an ineffectiveness claim on the ground that the petitioner failed to meet his burden of showing prejudice, a court need address only that prong of Strickland. Id.

At the time the Pennsylvania State Court reviewed the ineffective assistance claims raised by Colon, Strickland's two-pronged test was the "clearly established federal law" applicable to ineffective assistance of counsel claims. Under Pennsylvania state law, a three-pronged test is applied to ineffective assistance of counsel claims. See Commonwealth v. Pierce, 515 Pa. 153, 527 A.2d 973, 975-977 (Pa. 1987). The Third Circuit Court of Appeals has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland. Jacobs v. Horn, 395 F.3d 92, 107 n.9 (3d Cir. 2000).

16

## IV. <u>Discussion</u>

Petitioner raises three grounds for relief. (Doc. 1). Because Petitioner's second issue raised is completely undiscernible to Respondent and the Court, and no traverse has been filed by Petition to explain this claim, the Court concludes that Colon's petition raises only one claim of trial counsel's ineffectiveness and one claim of sufficiency of evidence. However, Petitioner raised only one claim, trial counsel's ineffectiveness, in state court. The Court addresses this claim first.

### Claim I.

Petitioner claims that trial counsel was ineffective for failing to object to the trial court's questioning of the defense witness. (Doc. 1, petition). The Superior Court addressed Petitioner's trial counsel's ineffectiveness claim as follows:

> Here, the PCRA court found that Appellee had received ineffective assistance of trial counsel for failing to object to the trial court's questioning a witness. (**See** PCRA Court Opinion, 10/25/12, at 14). The test for ineffective assistance of counsel is the same under both the United States and Pennsylvania Constitutions. **See Strickland v. Washington**, 466 U.S. 668 (1984); **Commonwealth v. Jones**, 815 A.2d 598, 611 (Pa. 2002). A defendant must demonstrate that: (1) this underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. **See Commonwealth v. Steele**, 961 A.2d 786, 796 (Pa. 2008)

(citations omitted). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. **Jones, supra at 611**. Further, a claim for ineffective assistance of counsel can contain both factual and legal elements; our scope of review concerning legal issues is plenary. **Commonwealth v. Reaves**, 923 A.1119, 1124 (Pa. 2007) (citations omitted). This Court's degree of deference to the PCRA court "may vary depending upon whether the decision involved matters of credibility or matters of applying the governing law to the facts as so determined." **Id**. (citations omitted).

Here, the PCRA court held that the trial court's "questioning of the sole defense witness was an abuse of discretion and that counsel did provide ineffective assistance in failing to object to the questioning." (PCRA Ct. Op., 10/25/12, at 14). We disagree.

At trial, Appellee presented one witness on his behalf, his cousin, Kerry Poindexter, who testified that he had borrowed Appellee's car on the evening before the incident, April 30, 2009, and used it to transport intoxicated individuals from the bar where he worked to their homes. (**See** N.T. Trial, 1/14/11, at 123-26). Thus, Poindexter inferred, it was possible that one of those individuals left the drugs in the car. (**See id**. at 125-26). On cross-examination, the following occurred.

> [The Commonwealth]: . . .Now, when you got into that vehicle, did you notice that – well, let me ask you. . .—did you notice the drugs being in the car?
>
> [Poindexter]: Not at all.
>
> [The Commonwealth]: Okay. So, you never noticed the drugs being in the car; correct?
>
> [Poindexter]: No.
>
> [The Commonwealth]: So, it's possible those drugs were in the car before you borrowed it; correct?
>
> [Poindexter]: I can't say that at all.

18

[The Commonwealth]: So, it's possible?

[Poindexter]: I can't say that.

[The [c]ourt: You can't say it's possible?

[Poindexter]: I can't say it's possible. You know[] I didn't go in the car and search the car.

The [c]ourt: Well, is it possible the person you drove home put the drugs in the car?

[Poindexter]: That's possible.

The [c]ourt: Why is that possible, but the possibility that the drugs were already in there is not possible?

[Poindexter]: I can't say that it is.

The [c]ourt: Why is that possible, but the possibility that the drugs were already in there is not possible?

[Poindexter]: I can't say that it is.

The [c]ourt: But you can say it's possible for the person you drove home? Okay.

[Poindexter]: I can't say.

The [c]ourt: Go ahead.

(**Id**. at 128-29). The Commonwealth then continued cross-examining Poindexter. (**See id**. at 129-31). After the end of the cross-examination, and after determining that Appellee's counsel did not have any questions on redirect, the trial court asked the following questions:

[The court]: Sir, when did you find out that your cousin had been charged with these offenses?

[Poindexter]: The next day.

[The court]: The next day?

[Poindexter]: Uh-huh.

[The court]: So, the very next day you found out that your cousin had been charged with this, did you tell your cousin about the fact that you had driven people home the night before?

[Poindexter]: Sure. I mean, he pretty much knew I had.

[The court]: Just answer yes or no. Yes or no?

[Poindexter]: Yes.

[The court]: Okay. Now, the very next day, you would've known how many people you drove home the night before; right?

[Poindexter]: Through the course of the night, no sir.

[The court]: Okay. You would've known where you went to drop people off?

[Poindexter]: Right. Just in Columbia.

[The court]: No, but you would've known specifically where you dropped people off.

[Poindexter]: Usually at their homes.

[The court]: Right. But what I'm saying is last night I drove to Rite Aid. Today I remember that and I remember exactly where that Rite Aid is.

[Poindexter]: Uh-huh.

[The court]: So, the day after when your brother – you learned that your brother or your cousin had been charged, you would've recalled exactly the houses you went to even if you didn't know those people's names.

[Poindexter]: Off the top of my head, sir, I can't say.

[The court]: So how many people did you drive home the night before?

[Poindexter]: Through the course of the night, I mean, it was whenever someone had too much.

[The court]: how man people –

[Poindexter]: Or someone wanted to go home.

[The court]: How many people?

[Poindexter]: I could guesstimate, that's it.

[The court]: Okay. How many?

[Poindexter]: A dozen.

[The court]: You drove a dozen people home?

[Poindexter]: I'm guessing at this.

[The court]: Okay. Well, the day after, when your cousin had been charged, you could've said I drove X number of people home?

[Poindexter]: I didn't reason like that. You know, I mean, I didn't think like that.

[The court]: Well, one of those –

[Poindexter]: On a constant, I would drive people home any time I work there. I don't work there no more now and I still take them home.

[The court]: Okay. One of those persons potentially dropped an enormous quantity of cocaine which resulted in your cousin being here today. That would've been something when you learned of your cousin's charges that you wanted to think about, am I correct?

[Poindexter]: Uh-huh.

[The court]: Did you not think about that?

[Poindexter]: Sure. I feel guilty.

[The court]: Okay. And what did you think about – how many people do you recall driving home?

[Poindexter]: I couldn't say.

[The court]: Okay.

[Poindexter]: You know, approximately, ten to a dozen.

[The court]: Okay.

[Poindexter]: But I feel partially responsible as well.

[The court]: Okay. And what are your hours? Specifically, when you were working that night.

[Poindexter]: I would go in there prior to me going, you know, being on duty, but my specific hours they wanted me there from 9 to 2.

[The court]: Okay. So, you were there from 9 to 2, for five hours?

[Poindexter]: I could be there for five hours. Specifically, I got paid from 9 to 2.

[The court]: Okay. So, you were there working for five hours and during the course of working, you may have drive between ten and a dozen individuals home?

[Poindexter]: Sure.

[The court]: But it's not policy necessarily for to have you driving people home, it's just something you do as a courtesy?

[Poindexter]: Usually.

[The court]: Well, when are you working actually at the bar?

[Poindexter]: When I'm – when I'm there. It's in Columbia, it's a small community. I could take them home and be back in five minutes.

(**Id**. at 131-35). Prior to the start of the trial, the trial court instructed the jury as follows, with respect to its possible questioning of witnesses.

During the course of trial, I may question some of the witnesses myself. The only reason I would do so is, as I'm hearing evidence unfold for the first time as you are, I think that there might be a question in one of your minds concerning some of the evidence. That's the only reason.

You should not assume or presume that I take a position with regard to the guilt or innocence of [Appellee] if I do, in fact, ask questions. I'm duty-bound not take any position whatsoever with [Appellee] or with regard to [Appellee's] guilt.

Again, the only reason, I would do so, ask questions that is, is because as I'm hearing the evidence unfold, I think

> there might be something in your mind or minds about some of the evidence.

(N.T. Trial, 1/13/11, at 45). In his closing instructions, the trial court instructed the jury that:

> As judges of the facts, you are the sole judges of the credibility of the witnesses and their testimony. This means you must judge the truthfulness and accuracy of each witness' testimony and decided what, if any, part you believe and to what extent you believe it.
>
> * * *
>
> I am not, however, the judge of the facts. It is not for me to decide what the facts in the case are.
>
> You the jurors, are the judges of the facts. It will be your responsibility to consider the evidence, to find the facts, and thereafter, applying the law to the facts as you find them, determine whether or not the Commonwealth has sustained its burden. . . beyond a reasonable doubt.

(N.T. Trial, 1/14/11, at 172-76).

The PCRA court held that, even with this instruction, the trial court's questioning of the witness was so prejudicial to Appellee that counsel was ineffective for failing to object to the issue both because this led to a failure to preserve the issue for direct appeal and because it discredited the witness in the minds of the jury. (PCRA Ct. Op., 10/25/12, at 11-14). We disagree because even assuming, *arguendo*, that Appellee's claim is of arguable merit, Appellee did not demonstrate that there was not a reasonable basis designed to effectuate his interests for counsel's failure to object; and that but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different.

Initially, we note that the record with respect to the issue of counsel's failure to object to the trial court's questioning of the

defense witness[5] is sparse. (**See** N.T. PCRA Hearing, 8/27/12, at 177-78). Further, ironically, to the extent that there was any evidence taken on this issue, the majority of the questioning was done by the PCRA court, not by either the Commonwealth or Appellee's counsel. (**See id.**).

At the PCRA hearing, trial counsel testified that he did not object because he did not believe that the trial court would sustain an objection to its own conduct and because he did not want to draw attention to the issue and emphasize any damage already done to the credibility of the witness. (**See id.** at 177-78). The PCRA court found this strategy was not reasonable because "even if the objection might have been futile, the issue would have been preserved for appeal." (PCRA Ct. Op., 10/25/12, at 13).

However, any time counsel fails to make an objection, an issue is not preserved for appeal. This does not *per se* mean that counsel's decision not to object is unreasonable. Here, counsel was not questioned about whether he factored the problem of lack of preservation of an appealable issue into his decision not to object to the trial court's questioning. (**See** N.T. PCRA Hearing 8/27/12, at 175, 177-78). Thus, there is no basis for assessing the reasonableness of counsel's thinking process vis-à-vis an appeal on this record.

Trial counsel must have a reasonable basis for his or her actions or inaction; the fact that a strategy proves unsuccessful does not make it unreasonable. **See Commonwealth v. Spotz**, 896 A.2d 1191, 1235 (Pa. 2006). Here, the record reflects that, at the time the trial court started its initial questioning of Poindexter, he had already conceded on cross-examination that: (1) he did not know the names of the people he drove home; and (2) he never noticed any drugs in the car, but, somehow it was not possible that the drugs had already been in the car when he took possession of it. (**See** N.T. Trial, 1/14/11, at 128-29). Prior to the next portion of questions by the trial court, Poindexter further conceded: (1) he never went to the police with this information; and (2) he was

---

[5] We note that the trial court also questioned the Commonwealth's expert witness. (**See** N.T. Trial, 1/14/11, at 117-19).

close to his cousin, Appellee, and did not want Appellee to get into trouble. (**See id**. at 130-31).

"Counsel's ineffectiveness cannot be evaluated in hindsight but must be examined in light of the circumstances as they existed at the pertinent time." **Commonwealth v. Loner**, 836 A.2d 125, 133 (Pa. Super. 2003), *appeal denied*, 852 A.2d 311 (Pa. 2004) (citation omitted). Under the circumstances outlined above, it was reasonable for counsel to conclude that he did not want to make a likely futile objection that would merely serve to highlight the deficiencies in Poindexter's testimony. Thus, the PCRA court erred in holding that counsel lacked a reasonable basis for his decision not to object to the testimony.

Moreover, even if the PCRA court was correct in its holding that trial counsel lacked a reasonable basis for his decision, the PCRA court erred in its conclusion that, but for counsel's failure, there was a reasonable probability that the outcome would have been different. The PCRA court offered two alternate bases for this conclusion, initially stating that:

> [Appellee] has satisfied the third prong, that there is a high probability the outcome would have been different if defense counsel would have objected to the questioning. If he had, [the trial court] might have stopped the interrogation. And if not, the issue would have then been reviewable. If reviewed, there is a high probability that [Appellee] would have been granted a new trial.

(PCRA Ct. Op., 10/25/12, at 13). The PCRA court also found that:

> [Appellee] did not testify at trial and only presented the testimony of his cousin to offer an explanation as to why the drugs might have been in the vehicle. If the jury would have found the witness credible and believed that a passenger from the night before left the drugs in the car, then the jury may have concluded the evidence found on [Appellee's] person was not sufficient to find

him guilty of possession with intent to deliver. The outcome of the trial **may have been different** if the judge would not have conveyed to the jury, through his questioning of the lone defense witness, his opinion as to the credibility of that witness.

(**Id**. at 14) (emphasis added).

To begin with, the PCRA court has not offered any detailed legal analysis to support its position that there was a high probability that his Court would have granted Appellee a new trial. (**See id.** at 13). The Pennsylvania Rules of Evidence provides that '[w]here the interest of justice so requires, the court may interrogate witnesses, whether called by itself or by a party." Pa.R.E. 614(b). Further, "[a] new trial is required. . .only when the trial court's questioning is prejudicial, that is when it is of such nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial." **Commonwealth v. Manuel**, 844 A.2d 1, 9 (Pa. Super. 2004), *appeal denied*, 859 A.2d 768 (Pa. 2004) (citation omitted).

In **Commonwealth v. Roldan**, 572 A.2d 1214 (Pa. 1990), the defendant was charged with selling cocaine to a police informant and later selling additional cocaine to the same informant and a Pennsylvania State Trooper. At trial, the defendant claimed that he was entrapped and was under duress. **See Roldan, supra** at 1215. During their testimony, both the defendant and his wife attempted to link threats that they had allegedly received and alleged break-ins of their home, vehicles, and business to either the informant and/or the state trooper. **See id**. The trial court questioned the defendant and his wife about these insinuations. **See id**. at 1215-16. The defendant later claimed that these questions were improper and that trial counsel was ineffective for failing to object to them. **See id.** at 1214-15. Our Supreme Court disagreed stating:

It is plain to see that the appellant intended to insinuate something he was unwilling or unable to say directly. The trial judge's questions solicited, to the appellant's

benefit, what in fact he would not say because he could not, by direct evidence, support his contention. It may be under all the evidence, the hope it would be believed that he sold cocaine because the trooper conducted a reign of terror against him, was slim at best. Nonetheless, the judge's questions posited his defense in the light the appellant obviously hoped and intended. The trial judge cannot be faulted if it was not believed.

Here the questions from the bench served no other purpose than to attempt to make the testimony conform to the defenses raised in order that the jury might more readily comprehend the basis of those defenses and how the testimony supported those defenses. We take notice of the fact that the trial judge thoroughly instructed the jury before trial that: "I myself, although it's rare, may question one or more of the witnesses. If I do, such questions under no circumstances will reflect any opinion on my part about the testimony of that witness, about the credibility of that witness, or about the case itself[.]" Similarly, in his charge to the jury, the trial judge stated: "You must, therefore ignore any opinion you might think the attorneys or I have expressed about the guilt or innocence of the defendant, the credibility of any or all of the witnesses, the weight of the evidence, the facts proven by that evidence, and, of course, any inference to be drawn from those facts." These instructions served to stress to the jurors that it was their opinion and their opinion alone that mattered. That they resolved the credibility of the appellant's theories of defense against him was not the questioning from the bench but rather due to the fact that the evidence against this appellant was both overwhelming and credible.

**Id.** at 1216 (internal record citations and footnote omitted).

Here, as in **Roldan**, Poindexter insinuated what he could not say because of lack of direct evidence, namely that one of the people he drove home the night before placed the drugs in the car. (**See** N.T. Trial, 1/14/11, at 122-34). Again, as in **Roldan**, the trial

court's questions sought information relevant to Appellee's defense: that many people had been in the car over an extended period of time on the night before Agent Lapp searched the car and that one of them could have placed the drugs in the car. Further, as in **Roldan**, the trial court gave appropriate cautionary instructions in his opening and closing remarks to the jury. (**See** N.T. Trial 1/13/11 at 45, N.T. Trial, 1/14/11, at 172-76). Given the similarity between the instant matter and **Roldan**, we conclude it was legal error for the PCRA court to conclude that there was a "high probability" that Appellee would have been successful on appeal if trial counsel had objected and preserved the claim. **See Roldan, supra** at 1216-17.

(Doc. 15-1 at 299-312, Commonwealth of Pennsylvania v. Colon, 2076 MDA 2012, unpublished memorandum (Pa. Super. filed Aug. 15, 2013)).

In evaluating the first prong of the Strickland test, the court must be "highly deferential" toward counsel's conduct. Id. at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Id. ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). "Strickland and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing Strickland, 446 U.S. at 689). Notably, courts will not deem counsel ineffective for failing to raise a meritless

argument. Strickland, 466 U.S. at 691; United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

In the instant matter, trial counsel's actions were designed to advance the interests of his client. Trial counsel testified that the reason he did not object to the trial court's questioning was that he did not want to draw additional attention to the questions and did not want to emphasize the trial court's questioning to the jury. Minimizing the impact of what trial counsel believed to be damaging testimony is a reasonable trial strategy designed to advance an accused's interests. Accordingly, trial counsel cannot be found ineffective for employing a reasonable strategy and the state court's finding of such is not an unreasonable application of Strickland.

Additionally, Petitioner was not prejudiced by trial counsel's failure to object to the trial court's questioning, as the Commonwealth presented ample evidence of Petitioner's guilt. Specifically, the Commonwealth introduced evidence that, when Petitioner was searched, law enforcement officials found on his person a cellular phone, a TracFone, and a digital scale. When Petitioner's car was searched, those same officers found a jacket containing a bank envelope with 77.5 grams of cocaine in it and Petitioner's wallet and ID. Petitioner was further found to have $1,413 in cash. The Commonwealth's expert on drug packaging and sales in York opined that, in

a hypothetical situation based upon the facts of this case, the Petitioner possessed cocaine with the intent to deliver it. Accordingly, because Petitioner cannot show prejudice, his claim that trial counsel was ineffective fails.

## Claim II.

Petitioner's second claim for relief states "appeal to the commonpleas sentencing court, PCRA petition, unit, appeal to the High States Court an Supreme Court." (Doc. 1, petition at 8). The supporting facts are listed as "the facts or support by the trial jury record." Id.

Pursuant to Rule 2(c) of the Rules Governing Habeas Corpus Cases, 28 U.S.C. §2254, a petitioner is required to "set forth in summary form the facts supporting each of the ground" specified in the petition. Bald assertions and conclusory allegations do not suffice. Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir.), cert. denied, 484 U.S. 946 (1987). Because this Court is unable to discern what claim for relief Petitioner is attempting to raise in his second ground, the Court will dismiss Claim II without prejudice.

## Claim III.

Petitioner's third claim states, "ineffective assistance of counsel" and "insufficient of evidence." (Doc. 1 at 10).

Initially, the Court notes that the sufficiency of the evidence was not raised on direct appeal or in Petitioner's PCRA petition; nor was the claim that trial counsel was ineffective for failing to raise a sufficiency of evidence claim. Thus, these issues are unexhausted and procedurally defaulted. See McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999); Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000). Regardless, Petitioner's unexhausted claims are without merit and may be addressed as such by this Court pursuant to 28 U.S.C. §2254(b)(2). See Rhines v. Weber, 544 U.S. 269, 277-78 (2005); Carrascosa v. McGuire, 520 F.3d 249, 255 (3d Cir. 2008).

The federal standard for evaluating sufficiency of evidence claims is set out by the Supreme Court in Jackson v. Virginia. See Coleman v. Johnson, 132 S. Ct. 2060, 182 L. Ed. 2d 978 (2012), citing Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). As set forth by Supreme Court in Jackson, "[t]he Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." See Jackson, 443 U.S. at 309, citing In re Winship, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). On habeas review, the federal court is to determine whether, "after viewing the evidence in the light most favorable to the prosecution, any rational **trier** of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319

(emphasis in original). A habeas petitioner is entitled to relief only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof beyond a reasonable doubt." Id. at 324. This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16. The credibility of witnesses, the resolution of conflicts of evidence, and the drawing of reasonable inferences from proven facts all fall within the exclusive province of the fact finder and, therefore, are beyond the scope of federal habeas sufficiency review. Jackson, 443 U.S. at 319.

Here, the Commonwealth presented evidence that police found cocaine, a digital scale with no drug residue, over $1,000 in cash, and two cell phones, in Petitioner's vehicle. (See Doc. 15-1 at 312). Additionally, police found drugs inside Petitioner's jacket, next to his wallet containing his driver's license. Id. Moreover, the Commonwealth presented the expert testimony of police officer Russell Schauer, who testified regarding the packaging and selling of drugs in York County. Id. Officer Shauer testified that, in his expert opinion, he believed Petitioner was dealing drugs because no paraphernalia for personal use was found on his person. Id. Officer Schauer further testified that the quantity of drugs (77.5 grams), the presence of a digital scale, two cell phones (one expensive and one a throw- away),

and the large sum of cash and its denominations of the cash; were all consistent with drug dealing. Id.

Thus, the evidence presented was more than sufficient to sustain a conviction for possession of drugs with intent to deliver, possession of a controlled substance, and possession of drug paraphernalia. Given the nature of the evidence that was presented, the Court finds that trial counsel was not ineffective for failing to raise the claim because Petitioner would not have been successful.

## V.     Certificate of Appealability

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.'" Tomlin v. Britton, 448 Fed.Appx. 224, 227 (3d Cir. 2011) (citing 28 U.S.C. § 2253(c)). "Where a district court has rejected the constitutional claims on the merits, ... the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

For the reasons set forth herein, Petitioner has not made a substantial showing of the denial of a constitutional right or that jurists of reason would find it debatable that Court's assessment of the claims debatable or wrong. Accordingly, a COA will not issue.

## VI.    **Conclusion**

For the reasons set forth above, the Court will deny the petition for writ of habeas corpus. A separate order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: January 27, 2022**
15-1526-01